IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION


LEROY BOND,                          *

        Plaintiff,                   *

vs.                                  *
                                         CASE NO. 4:05-CV-43 (CDL)
CROSS ROADS HOSPITALITY COMPANY      *
LLC., a subsidiary of Defendant
INTERSTATE HOTELS & RESORTS          *
d/b/a COLUMBUS-AIRPORT INN,[1]
                                     *
        Defendant.
                                     *
_____

O R D E R

    Presently pending before the Court are Defendant's Motion for
Summary Judgment (Doc. 57) and Motion to Strike (Doc. 63).  For the
following reasons, Defendant's Motion for Summary Judgment is
granted, and consequently Defendant's Motion to Strike is denied as
moot.


BACKGROUND

    This race discrimination case arises from the decision by
Plaintiff's employer not to promote Plaintiff, a black male.   In
March 2001, Crossroads Hospitality, a division of Interstate Hotels

---

[1]This is the caption as contained in Plaintiff's Amended Complaint.
In the body of the Amended Complaint, however, Plaintiff named as the
Defendant "Interstate Hotels and Resorts, d/b/a Columbus-Airport Hampton
Inn."  In Defendant Interstate Hotels & Resorts, Inc.'s Answer to Amended
Complaint, Defendant explained that "Crossroads Hospitality Company,
L.L.C." is a subsidiary of Interstate and Plaintiff's employer.  No party
has explained to the Court whether Plaintiff's original caption contained
a misnomer or an incorrect party.  Therefore, in order to ensure that all
parties are mentioned in the caption, the Court is using the caption from
Plaintiff's Amended Complaint.

("Defendant"), hired Plaintiff, Leroy Bond, as the Assistant General Manager ("AGM") for the Columbus Airport Hampton Inn ("the hotel") in Columbus, Georgia.  As AGM, Plaintiff had responsibility for the front desk, breakfast operations, some accounting functions, and some revenue management duties.  Additionally, Plaintiff was responsible for the property during the General Manager's ("GM") absence.

When Plaintiff was hired in 2001, the GM was Neal Lombardo ("Lombardo").  Lombardo, who is white, had a good relationship with Plaintiff, who is African-American.  Plaintiff was ranked as an above average employee by Lombardo on Plaintiff's performance evaluations in October 2001, June 2002, and March 2003.  During this same period of time, however, the hotel failed two of three Quality Assessments ("QA") by Hampton Inn—in February 2002 and April 2003.  Additionally, throughout this period, the overall guest service rating scores ("GSRS") for the hotel were significantly below the system average.

After the hotel's second QA failure in April 2003, Lombardo resigned.  Robert Stammerjohn ("Stammerjohn"), the Regional Director of Operations ("RDO"), appointed Maxine Booth ("Booth") as the interim GM for the hotel.  As the RDO, Stammerjohn was in charge of hiring a replacement for Lombardo.  An ad for the general manager position was placed on the internet and listed as requirements:

Education: A four year college degree or equivalent education/experience.

Experience: Five to ten years of employment in a related position.

Skills and Abilities: Requires knowledge of the hospitality and business management fields.
- Requires considerable working knowledge of other major areas and the skill to integrate and communicate that information.
- Requires studying, analyzing and interpreting complex activities or information in order to improve current practices or develop new approaches.
- Ability to make decisions with only general policies and procedures available for guidance.
- Requires highly developed communication skills to interface with executives at all organizational levels; owners, investors, employees and guests.

(Stammerjohn Dep. Ex. 1, Feb. 28, 2006.)  On June 6, 2003, Plaintiff met with Stammerjohn and indicated that he was interested in the general manager position.  Stammerjohn conducted an informal interview, discussing any suggestions Plaintiff had to ensure the hotel passed the next QA and to improve the GSRS, and asked Plaintiff to submit a copy of his resume.  During the interview, however, Stammerjohn determined that Plaintiff was not the best candidate "to turn the property around at that time." (Stammerjohn Dep. 47:17-18.)

Stammerjohn then reviewed 150 resumes submitted in response to the internet ad, conducted first round interviews with approximately ten candidates, and selected two finalists—Clare Royal ("Royal") and Rachel Hendricks ("Hendricks").  (Stammerjohn Dep. Ex. 4 at 3.) Plaintiff was not selected as a finalist.  Royal and Hendricks are both Caucasian females.  Initially, Stammerjohn offered the job to Royal because of her experience and prior proven ability to turn around an existing property.  (Stammerjohn Dep. 28:3-19.)  Royal, however, turned the position down at the last minute.  Stammerjohn

3

then offered the position to Hendricks, who he also deemed highly qualified because of her good recommendations, her experience with large resort properties, her previous work history with the Hampton brand, and her years of management. (Stammerjohn Dep. 29:3-30:2.) Hendricks became GM of the hotel in September 2003. On September 15, 2003, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) claiming racial discrimination.

During both Booth's and Hendricks's terms as GM, the hotel received acceptable grades on its QAs. Around March 2004, Hendricks resigned in order to take a position in Brunswick, Georgia. By this time, Steve Sayed ("Sayed") had replaced Stammerjohn as the RDO. In April 2004, Sayed hired Norman Eldridge ("Eldridge") to replace Hendricks as GM. Sayed did not hire an interim GM; therefore, Plaintiff served as the GM during part of the month of March 2004. During March, the hotel passed a QA.

In August 2004, however, under the supervision of Eldridge, the hotel again failed a QA. After this failure, Eldridge resigned and Sayed appointed a "task force" to serve as GM of the hotel. On October 18, 2004, Loan Phan ("Phan") became the GM as part of the task force designed to improve the hotel. On December 10, 2004, Phan gave Plaintiff a success plan in order to improve his skills as a leader, trainer, and communicator. (Pl.'s Dep. Ex. 33, Mar. 2, 2006.) On January 13, 2005, Plaintiff resigned in order to take a position as GM at the Fairfield Inn in Columbus, Georgia.

Plaintiff filed his original Complaint in the United States District Court for the Middle District of Alabama claiming that Defendant had discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  Specifically, Plaintiff claims that he was subjected to disparate treatment when (1) the hotel failed to promote him to GM in 2003 and 2004, and (2) when he received a lower salary than the sales manager, Pam Hudson ("Hudson"), and Eldridge. Additionally, Plaintiff contends that the hotel retaliated against him in 2004 when he was twice denied the promotion to GM.  Plaintiff subsequently filed an Amended Complaint.  The case was eventually transferred to this Court.  Defendant now seeks summary judgment on Plaintiff's Title VII and 42 U.S.C. § 1981 claims, contending that Plaintiff cannot establish a prima facie case of disparate treatment or retaliation, and that even if he could establish a prima facie case, he has produced no evidence from which a reasonable jury could conclude that Defendant's legitimate, nondiscriminatory reasons for taking its actions are a pretext for discrimination.  Defendant also seeks summary judgment on Plaintiff's 42 U.S.C § 1983 claim because Defendant is not a state actor.

DISCUSSION

## I.  Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial. *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## II.  Title VII and § 1981 Claims

Plaintiff claims that he was subject to disparate treatment and retaliation because of his race in violation of Title VII and 42 U.S.C. § 1981. Since "[b]oth of these statutes have the same requirements of proof and use the same analytical framework," the

6

Court addresses these claims together. *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998).

A.  Disparate Treatment – Failure to Promote

Title VII and § 1981 prohibit intentional discrimination in employment because of an employee's race.  42 U.S.C. § 2000e-2, 42 U.S.C. § 1981.  In disparate treatment cases, the plaintiff bears the burden of establishing discrimination. *Cooper v. S. Co.*, 390 F.3d 695, 723 (11th Cir. 2004).  Where, as here, a plaintiff uses circumstantial evidence as proof of intentional discrimination, the *McDonnell Douglas* framework is used to analyze the claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  A prima facie case of discrimination in a failure to promote case is established by "proving that (1) the plaintiff is a member of a protected minority group; (2) the plaintiff was qualified for and applied for the promotion; (3) the plaintiff was rejected in spite of his qualifications; and (4) the individual who received the promotion is not a member of a protected group and had lesser or equal qualifications." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998).  If the plaintiff establishes a prima facie case, a presumption of discriminatory intent is created. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  "The

7

burden then shifts to the employer to articulate legitimate nondiscriminatory reasons for the failure to promote." *Carter*, 132 F.3d at 643.   If the defendant employer carries this burden, the presumption of discrimination is rebutted and the plaintiff must produce evidence from which a reasonable jury could conclude that defendant's legitimate non-discriminatory reasons for its actions are pretext for a discriminatory decision.   *Burdine*, 450 U.S. at 255; *McDonnell Douglas*, 411 U.S. at 804; *Carter*, 132 F.3d at 643.

   1. *Prima Facie Case*

   The Court finds that Plaintiff has established a prima facie case of discrimination regarding Defendant's decision to hire Rachel Hendricks instead of promoting Plaintiff.   Plaintiff has shown that he applied for the position of GM, was qualified for the position based on the hotel's internet ad, was denied the promotion, and that a person outside his protected class received the promotion.[2]   The Court finds, however, that Plaintiff has failed to establish a prima facie case of discrimination in promotion regarding the hiring of either Norman Eldridge or the task force, specifically Loan Phan, for the position of GM.

   In order to support his claim, Plaintiff alleges that (1) he was twice passed over for the GM position after Hendricks resigned and (2) Eldridge and the task force members were lesser qualified than

---

   [2]For purposes of this Order, the Court assumes that Hendricks was equally qualified to or lesser qualified than Plaintiff.

Plaintiff.  These assertions, by themselves, are not sufficient to withstand a motion for summary judgment. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion . . . the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true.") (internal citation and quotation marks omitted); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Specifically, Plaintiff has failed to present any evidence establishing that either Eldridge or Phan was equally qualified to or lesser qualified than Plaintiff.  In fact, Plaintiff admits that he knows nothing about Eldridge's qualifications for the position of GM.  (Pl.'s Dep. 94:6-9.)  Plaintiff's unsupported statement that he was better qualified than Eldridge or any member of the task force does not create a genuine issue of material fact as to whether the person who received the promotion had lesser or equal qualifications to Plaintiff.  *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").  Plaintiff, therefore, has failed to

establish the fourth element of a prima facie case of discrimination in promotion with respect to Eldridge and the task force members.[3]

In sum, Plaintiff has established a prima facie case of disparate treatment with regard to the hiring of Rachel Hendricks. Plaintiff, however, has failed to establish a prima facie case of disparate treatment through failure to promote with respect to Eldridge and the task force. Defendant is therefore entitled to summary judgment on Plaintiff's Title VII and § 1981 claims for disparate treatment based on the hiring of Eldridge and the task force. To determine whether summary judgment is appropriate as to Defendant's hiring of Hendricks requires further analysis.

2. *Legitimate Non-discriminatory Reasons*

Since Plaintiff has presented a prima facie case of discrimination regarding the hiring of Hendricks, the burden shifts to Defendant to articulate legitimate non-discriminatory reasons for that decision. Stammerjohn, the RDO in 2003, made the decision to hire Hendricks instead of promoting Plaintiff. Defendant has presented several different reasons for Stammerjohn's decision. First, Stammerjohn deemed Plaintiff as partially responsible for the QA failures in 2002 and 2003. (Stammerjohn Dep. 42:11-43:16, 61:5-

---

[3]Even if Plaintiff were able to establish a prima facie case of discrimination regarding the hiring of Eldridge and the task force, he has produced no evidence that Defendant's reasons for not promoting him were pretextual. "In a failure to promote case, a plaintiff cannot prove pretext by simply arguing . . . that he was better qualified than the [person] who received the position he coveted." *Alexander v. Fulton County*, 207 F.3d 1303, 1399 (11th Cir. 2000).

10

62:4.)  Second, although Lombardo gave Plaintiff high marks on his evaluations, Defendant felt that Lombardo's judgment was questionable.  Therefore, Stammerjohn depended on his own observations as an evaluation of Plaintiff's performance.  Based on these observations, Stammerjohn did not believe that Plaintiff had the ability to turn the hotel around.  (Stammerjohn Dep. 43:9-16.) For example, Stammerjohn asked Plaintiff to do role-playing with front desk employees in order to improve the check-in process. Stammerjohn felt that Plaintiff did not fulfill this request, and Stammerjohn considered this when determining whether to promote Plaintiff to GM.  (Stammerjohn Dep. 22:23-23:11, 42:23-43:16.) Finally, Stammerjohn felt that Hendricks had superior experience and qualifications—she had excellent recommendations, had managed complex properties, had worked with the Hampton Inn brand before, and had past experience of drastically improving the GSRS. (Stammerjohn Dep. 29:15-30:2, 35:2-20.)  These reasons satisfy Defendant's burden of articulating legitimate non-discriminatory reasons for failing to promote Plaintiff.

   *3. Pretext*

   Since Defendant has articulated legitimate non-discriminatory reasons for hiring Hendricks over promoting Plaintiff, the burden shifts to Plaintiff to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination."  *Brooks v. County Comm'n of Jefferson County*, 446

11

F.3d 1160, 1163 (11th Cir. 2006) (quotation marks and citation omitted).   In order to meet this burden and defeat summary judgment, the Plaintiff must show "*both* that the [articulated] reason was false, *and* that discrimination was the real reason" for the hiring decision.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).   In a failure to promote case,

> a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer.

*Brooks*, 446 F.3d at 1163 (citation omitted).   In making a determination on pretext, the Court centers its inquiry "upon the employer's beliefs, and not the employee's own perceptions of his performance."  *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).   Thus, Plaintiff cannot defeat summary judgment "by simply quarreling with the wisdom of [Defendant's articulated non-discriminatory] reason."  *Brooks*, 446 F.3d at 1163.   Instead, in attacking Defendant's proffered legitimate non-discriminatory reasons based on the qualifications of the candidates, Plaintiff must establish that the "disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the [P]laintiff for the job in question."  *Cooper*, 390 F.3d at 732; *see*

*also Ash v. Tyson Foods, Inc.*, 126 S. Ct. 1195, 1197 (2006) (citing with approval the abovementioned *Cooper* standard).

Plaintiff claims that Defendant's articulated reasons for hiring Hendricks over him are pretext because (1) he was better qualified than Hendricks, (2) his interview was different than other candidates, and (3) Stammerjohn's hiring criteria were subjective which allowed him to manipulate the hiring process. The Court finds that Plaintiff has not presented sufficient evidence of pretext to create a genuine issue of material fact for the jury. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of disparate treatment with respect to the hiring of Hendricks.

a. Qualifications

Plaintiff has failed to show that the disparity between his qualifications and Hendricks's qualifications was so great that no reasonable person could have hired Hendricks over him. Plaintiff has presented no evidence to contradict Stammerjohn's statements that he hired Hendricks because she had experience as a manager at a complex hotel property, that she had excellent recommendations from her general managers, that she already had a history working with Interstate, and that she had experience in improving GSR scores in a failing hotel. Instead, Plaintiff has attempted to show that Hendricks misstated her qualifications on her resume. Even assuming that information on Hendricks's resume was false, Plaintiff has failed to show that Defendant knew that the information was

13

fabricated.   To the contrary, Stammerjohn testified that he called the employers listed on her resume and received references from those employers. (Stammerjohn Dep. 34:18-20.) Stammerjohn, therefore, had no reason to disbelieve the information on Hendricks's resume.

The information about Plaintiff's qualifications upon which Defendant made its decision showed Hendricks had seven years in hospitality management, over two years experience as a manager at a large resort hotel, training in Hampton Inn brand course requirements, assistance in improving GSR scores to above the system average in a Hampton Inn hotel, and a two-year degree in hospitality management.   Plaintiff's resume indicates that he had approximately six years experience in hospitality management, that he had training in management, supervision, and administration, that he had an associate degree in accounting, and that he assisted in improving the quality and performance of hotel personnel at the Columbus Sheraton. At the time of his interview with Stammerjohn, Plaintiff would have had an additional two years management experience, for a total of eight years.   Plaintiff has provided no evidence other than his and Hendricks's resumes to show that he was better qualified than Hendricks.  The evidence that Plaintiff points to in opposing summary judgment is insufficient to show that the disparities in Plaintiff's and Hendricks's qualifications are "of such weight and significance that no reasonable person, in the exercise of impartial judgment,

14

could have chosen [Hendricks] over [P]laintiff for the job in question." *Cooper*, 390 F.3d at 732.

Additionally, Plaintiff has failed to produce evidence to show that Stammerjohn's opinions of Plaintiff's qualifications and performance were actually pretext for racial discrimination. Stammerjohn explained that the hotel failed multiple QAs partially because of the front desk check-in process, which "Mr. Bond was directly responsible for." (Stammerjohn Dep. 20.) Stammerjohn's belief that Plaintiff was in part responsible for the failed QAs is supported by the February 15, 2002, QA which states that check-in "was not in compliance with current Hilton HHonors 'Zip In' check-in procedures." (Pl.'s Dep. Ex. 12 at 2.) Additionally, the hotel failed an April 7, 2003, QA because of a violation of the "Major Rules" for "non-compliance of the HHonors program." (Pl.'s Dep. Ex. 19 at 2.) Stammerjohn also specifically asked Plaintiff to train his front desk staff through role-playing exercises, but Plaintiff failed to do so. (Stammerjohn Dep. 22:17-23:11.) Where, as here, an employer has presented evidence of poor performance on the part of an employee, that employee cannot rest on his own assertions of his good performance to defeat summary judgment. *Holifield*, 115 F.3d at 1565. Therefore, Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact as to whether his qualifications were greater than Hendricks's.

b.  Disparity in Length of Interview

Plaintiff also contends that because his interview with Stammerjohn was different than other candidates, Stammerjohn's hiring process was actually pretext for discrimination.  The Court finds no evidence to support this assertion.  Plaintiff seems to misunderstand Stammerjohn's hiring process.  The evidence shows that on June 6, 2003, while Stammerjohn was at the hotel, Plaintiff approached Stammerjohn and explained that he was interested in the vacant GM position.  (Stammerjohn Dep. 41:24-42:3.)  Stammerjohn sat down with Plaintiff and asked Plaintiff what he would do to improve the hotel.  Stammerjohn claims the conversation lasted about thirty minutes; Plaintiff claims the conversation lasted only five minutes.  (Stammerjohn Dep. 42:7-10, Pl.'s Dep. 67:13-23.)  Stammerjohn admits that during the conversation (1) he did not have a copy of Plaintiff's resume, and (2) he felt that based on his prior observations of Plaintiff, that Plaintiff would not be the proper candidate to turn the hotel around.  (Stammerjohn Dep. 43:9-16.)  At the end of the interview, however, Stammerjohn requested that Plaintiff forward a copy of his resume to Stammerjohn.  (Stammerjohn Dep. 45:12-14.)  *After* Plaintiff had this initial conversation with Stammerjohn, Stammerjohn reviewed Plaintiff's resume along with over 150 submitted resumes from interested applicants.  (Stammerjohn Dep. 47:20-48:4, 48:24-49:5.)  Stammerjohn then conducted only ten more initial interviews.  These interviews were conducted over the phone.

16

(Stammerjohn Dep. 40:1-2.)  Of those candidates, Stammerjohn selected two finalists—Plaintiff was not selected as one of the finalist.

The fact that Plaintiff has submitted evidence which shows that the interview with Hendricks, when she was already selected as a finalist, was different from Plaintiff's initial interview, when Plaintiff was not selected as a finalist, does not show pretext. Plaintiff has not produced any evidence that shows that his interview with Stammerjohn was different than the other ten initial interviews, other than to show that they were conducted telephonically. Plaintiff has therefore failed to meet his burden in showing pretext based on a difference in his and other candidates' interviews.

c.  Subjective Hiring Criteria

Finally, Plaintiff claims that Stammerjohn manipulated the GM selection process through subjective hiring criteria which masked his true reason for failing to promote Plaintiff—racial discrimination. In order to support this claim, Plaintiff relies on *Bass v. Board of County Commissioners*, 256 F.3d 1095 (11th Cir. 2001).  In *Bass*, the court held that an employer may meet its burden to articulate a legitimate non-discriminatory reason based solely on subjective criteria, such as a poor interview, so long as the employer provides a "clear and reasonably specific factual basis upon which it based its subjective opinion."  256 F.3d at 1106 (quotation marks and citation omitted).

17

Here, Stammerjohn's decision not to promote Plaintiff was based on more than just his poor interview performance. *See* discussion *supra* of Defendant's legitimate non-discriminatory reasons. Plaintiff argues, however, that since Stammerjohn's decision not to promote Plaintiff was based in part on an interview, that is, in and of itself, circumstantial evidence of pretext. This argument is without merit. The court in *Bass* did not hold that an employer's reliance on interview performance as a hiring criteria automatically creates an issue of fact for a jury. *Bass*, 256 F.3d at 1106-08. A plaintiff must present evidence to support his assertions that an articulated legitimate non-discriminatory reason is actually pretext for discrimination. Thus, Plaintiff here should have presented evidence to show that Stammerjohn's interview process was specifically created to allow for race-based promotions. His failure to do so is fatal to this claim. In sum, Plaintiff has failed to produce any evidence of pretext. Defendant's Motion for Summary Judgment is therefore granted as to Plaintiff's failure to promote claims regarding Hendricks.

B.  Disparate Treatment - Wage Discrimination

Plaintiff next claims that he was subjected to disparate treatment under Title VII because the sales manager of the hotel, Pam Hudson, and a GM, Norman Eldridge, received higher salaries than Plaintiff. As in the failure to promote context, Plaintiff must first establish a prima facie case of wage discrimination. Plaintiff

must therefore show (1) that he is a member of a protected class, (2) that he received low wages, (3) that "similarly situated comparators outside the protected class received higher compensation[,]" and (4) that he "was qualified to receive the higher wage." *Cooper*, 390 F.3d at 735.  Since Plaintiff has failed to show that either Hudson or Eldridge are similarly situated employees to Plaintiff, he has failed to establish a prima facie case of discrimination in compensation.

First, regarding Pam Hudson, Plaintiff has not presented any evidence that shows that the sales manager position was similar to the assistant general manager position.  To the contrary, the only evidence submitted shows that while both the AGM and sales manager reported to the GM, they had very different responsibilities.  The AGM was responsible for hiring, training, and firing staff, scheduling front staff, some accounting, and breakfast. (Stammerjohn Dep. 15:2-14.)  The sales manager, however, was responsible for the "overall sales effort of the hotel."  (Stammerjohn Dep. 38:20-24.) Furthermore, Plaintiff admits that he knew nothing about Hudson's qualifications or experience; that the basis for calculating the sales manager's bonus was different than the basis for calculating the AGM's bonus; that he was unaware of the pay structure for sales managers at the Columbus-Airport Hampton Inn; and that he was unaware of the average salary for sales managers in the Columbus area. (Pl.'s Dep. 56:10-12, 58:1-12, 59:2-60:10.)  Plaintiff's opinion that

19

the AGM position was more important than the sales manager position—and thus entitled to a greater salary—does not by itself support his contention that he was intentionally discriminated against because of his race. Plaintiff has failed to establish a prima facie case of wage discrimination based on Pam Hudson's salary, and Defendant is entitled to summary judgment.

Second, Plaintiff alleges in his Amended Complaint that a Caucasian male was promoted instead of Plaintiff and that the white male was paid a higher salary than Plaintiff. (Compl. ¶ 8.) The Court assumes that this claim refers to the hiring of Norman Eldridge for the position of GM in 2004. This claim has no merit. Plaintiff cannot establish a prima facie case of discrimination in compensation regarding Eldridge because Eldridge was the GM. The position of GM is superior to the position of AGM. Furthermore, the Plaintiff has failed to introduce evidence establishing Eldridge's salary. Since Plaintiff has not and cannot establish a prima facie case of wage discrimination regarding Eldridge's salary, Defendant is entitled to summary judgment on this claim.

C. Retaliation

Plaintiff also claims that Defendant's failure to promote Plaintiff to GM twice in 2004 constitutes retaliation. As in the disparate treatment context, Plaintiff must first establish a prima facie case of retaliation. Plaintiff attempts to establish his prima facie case by alleging that (1) he engaged in statutorily protected

activity, (2) he suffered an adverse employment action, and (3) the adverse employment action is causally related to the protected activity. *Wideman v. Wal-mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Once plaintiff establishes a prima facie case of retaliation, the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the challenged action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). The plaintiff can then defeat summary judgment by creating a question of fact as to whether the defendant's articulated reason is pretext for discrimination. *Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999).

Plaintiff has established the first element of a prima facie case of retaliation—he engaged in protected activity when he filed an EEOC complaint. Additionally, for purposes of this Order, the Court finds that a denial of a promotion is an adverse employment action. Therefore, the issue to be decided on summary judgment is whether Plaintiff has produced sufficient evidence from which a reasonable jury could conclude that a causal link exists between his protected activity and the adverse employment action.

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomms. Inc.*, 292 F.3d 712, 716 (quotation marks and citation omitted). "Close temporal proximity

21

between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Id.* at 716-17 (quotation marks and citation omitted).

Plaintiff's only evidence of a causal link between his EEOC filing and the decision to not promote him is a statement allegedly made by Eldridge, after Eldridge resigned, that "since Plaintiff filed an EEOC charge against the company, Plaintiff's future at Interstate was finished." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 7.)   Obviously this statement is not evidence of retaliation in the hiring of Eldridge over Plaintiff.  Additionally, there is no evidence that Eldridge made or influenced the decision to hire a task force as his replacement.   Plaintiff has failed to mention or depose Steve Sayed, the RDO and hiring decision-maker for the hotel during the time that Plaintiff claims he was subject to retaliation, and consequently has failed to present any evidence that shows that Sayed had any knowledge of Plaintiff's EEOC complaint. Furthermore, the large gap in time between Plaintiff's filing of the EEOC complaint and the alleged retaliatory actions—seven and eleven months—heavily weighs against a finding of causation.[4]  The Eleventh Circuit has held that, without other evidence of causation, a smaller temporal proximity of three and one-half months "between a protected

---

[4]Plaintiff filed his EEOC complaint on September 15, 2003.  Eldridge was hired in early April 2004.  Eldridge resigned and was replaced by the task force in August 2004.  Phan became GM as part of the task force on October 18, 2004.

activity and an adverse employment action is insufficient to create a jury issue on causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). Plaintiff, therefore, has failed to show a causal link between his protected activity and the adverse employment action, and cannot establish a prima facie case of retaliation based on the hiring of Eldridge or the task force. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

**III.  Claims under § 1983**

Plaintiff's final claim is a claim for discrimination under § 1983. Since Defendant is a private party, and Plaintiff has not alleged that Defendant is a state actor or engaged in state action, Defendant cannot be held liable under § 1983. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937-38 (1982). Consequently, Defendant's Motion for Summary Judgment is granted as to Plaintiff's § 1983 claims.

CONCLUSION

For the aforementioned reasons, Defendant is entitled to summary judgment on all of Plaintiff's claims. Defendant's Motion for Summary Judgment (Doc. 57) is granted. Defendant's Motion to Strike (Doc. 63) is denied as moot.

IT IS SO ORDERED, this 13th day of November, 2006.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

23